```
       IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MARYLAND
```

EVY B. ORELLANA                  :

    v.                           :   Civil Action No. DKC 20-0845

                                                    :

UNITED STATES OF AMERICA, et al. :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action is Defendants' Motion to Dismiss (ECF No. 22). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I.   Background[1]**

During the summer of 2018, Plaintiff, Evy B. Orellana, resided with her then boyfriend, Eric Trinidad, and their infant child in the basement of Mr. Trinidad's family home in Riverdale, Maryland. Plaintiff was pregnant at the time. Mr. Trinidad's mother, Yolanda Menendez, and younger sister resided upstairs. On July 3, 2018, at approximately 2 AM, Deputy U.S. Marshals ("DUSMs") Ryan Godec and Tristan Martin ("Individual Defendants") arrived at the

---

[1] Unless otherwise noted, the facts outlined here are set forth in the amended complaint and construed in the light most favorable to Plaintiff.

residence to execute an arrest warrant issued for Mr. Trinidad for misdemeanor assault. Both DUSM Godec and DUSM Martin are members of the Capital Area Regional Fugitive Task Force ("CARFTF").[2] DUSM Godec was accompanied by his tactical canine ("Dart").

    Ms. Menendez answered the door and spoke to the Individual Defendants. She stated that Mr. Trinidad was currently asleep in the basement with Plaintiff and their infant child, and that her daughter (Mr. Trinidad's sister) was asleep in a bedroom on the main floor. After waking and detaining Ms. Menendez's daughter, Individual Defendants proceeded downstairs to the basement where they encountered a locked door that partitioned the basement from the staircase leading to the main floor of the home. They broke down the locked door and without first providing a verbal warning, DUSM Godec released Dart from his tether, allowing him to enter the main living quarters of the basement. Dart quickly proceeded to a back bedroom where Plaintiff and Mr. Trinidad were sleeping with their child. The bedroom door was cracked or slightly open allowing Dart to enter the room. Upon entering, Dart "viciously" attacked Plaintiff, biting her upper left leg. Plaintiff and Mr. Trinidad screamed for help and for the dog to be released. The Individual Defendants then entered the bedroom, ordered Dart to

---

    [2] Plaintiff notes that the CARFTF states on its website that its mission is to "locate and apprehend the most violent and dangerous fugitives throughout the Washington D.C. metropolitan area, Maryland, and Virginia."

2

release Plaintiff, and called for an ambulance.  Plaintiff was transported to the hospital where she received 45 stitches in her upper left leg.

Plaintiff still experiences physical pain from her injuries and suffers from anxiety, depression, and severe emotional distress as a result the psychological trauma of the event. Plaintiff also suffered a miscarriage four months after the attack, which she believes was the result of the extreme physical and mental stress she endured following the incident.  She has undergone extensive psychological counseling and incurred thousands of dollars in medical bills.

Plaintiff timely filed a claim for her injuries with the U.S. Marshals Service as required by the Federal Tort Claims Act for claims against the United States.  The Department of Justice denied Plaintiff's claim on October 2, 2019.  Plaintiff filed a complaint in district court on March 31, 2020 against the Individual Defendants and the United States (collectively, "Defendants"). (ECF No. 1).  Defendants moved to dismiss.  (ECF No. 11).  On August 20, 2020, Plaintiff filed an amended complaint asserting one *Bivens* claim against the Individual Defendants and five claims under the Federal Tort Claims Act ("FTCA") against the United States.  (ECF No. 12).  On October 28, 2020, Defendants moved to dismiss the amended complaint.  (ECF No. 22).  Plaintiff responded

3

in opposition on November 18, 2020, (ECF No. 25), and Defendants replied on December 1, 2020. (ECF No. 26).

## II. Standard of Review

### A. Fed.R.Civ.P. 12(b)(1)

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.,* 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans,* 166 F.3d at 647. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond,* 945 F.2d at 768.

### B. Fed.R.Civ.P. 12(b)(6)

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). At this stage, all

well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). *See also, Mays v. Sprinkle*, --- F.3d ---, 2021 WL 1181273, *6 (4th Cir. March 30, 2021)("[O]n a motion to dismiss, we cannot rely on facts not found in the complaint or draw inferences in the [defendant's] favor.") But "[r]ule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).

In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus,

"[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

The amended complaint alleges a *Bivens*[3] claim against the Individual Defendants (Count I) and the following torts against the United States under the Federal Tort Claims Act: Battery (Count II), False Imprisonment (Count III), Negligence (Count IV), Gross Negligence (Count V), and Intentional Infliction of Emotional Distress ("IIED") (Count VI). (*See* ECF No. 12, at 8-16).

Defendants argue that the amended complaint must be dismissed in its entirety because the court lacks subject matter jurisdiction over Counts IV-VI because the United States has not waived its sovereign immunity for constitutional torts or IIED claims, Counts II-VI fail to state a claim because Plaintiff cannot establish that the Individual Defendants acted with actual malice, and Counts II and III fail because the Individual Defendants' actions were legally justified. (*See* ECF No. 22-1, at 14-28). Defendants also argue that, because Plaintiff's FTCA claims fail on their merits,

---

[3] *See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 394–97 (1971). Under *Bivens*, a plaintiff must allege that he or she was deprived of a constitutional right by a person acting under color of federal authority. *Goldstein v. Moatz*, 364 F.3d 205, 210 n.8 (4th Cir. 2004).

6

the FTCA's judgment bar requires dismissal of her *Bivens* claim and alternatively, that Individual Defendants are entitled to qualified immunity. (*See id.*, at 28-31).

### A.  Federal Tort Claims Act Claims Against the United States

The United States, and its officers, are presumed to be immune from suit, unless they have expressly waived their immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing Administration v. Burr*, 309 U.S. 242 (1940)).  The United States and its officers are liable under the FTCA only to the limited extent that the United States has waived sovereign immunity.  *See* 28 U.S.C. §§ 1346(b), 2674; *see also Rich v. United States*, 158 F.Supp.2d 619, 628 (D.Md. 2001).  The FTCA provides a limited waiver of sovereign immunity for claims against the United States for "acts or omissions of . . . law enforcement officers of the United States Government, . . . arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h) (1974).  As sovereign immunity has not been waived under the FTCA, § 2680(h), for the torts of negligence (Count IV) or gross negligence

(Count V), those claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.[4]

Plaintiff's remaining tort claims, for which sovereign immunity *is* waived, are governed by the law of Maryland, where the alleged tortious acts occurred. *See* 28 U.S.C. §§ 1346(b); 2674. Under Maryland statutory law, individual state government employees are immunized from tort liability for acts or omissions committed within the scope of their employment and made without actual malice or gross negligence. *See* Md.Code Ann., Cts. & Jud. Proc. § 5-522(b); *Davis v. Muse,* 51 Md.App. 93, 441 A.2d 1089, 1093 (1982)). Under Maryland law, "actual malice" is defined as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) (internal quotation marks and citations omitted). "Malice is established by proof

---

[4] Plaintiff's claims for negligence and gross negligence are claims for excessive use of force in effecting a seizure. Thus, in reality, such claims assert constitutional torts under the Fourth Amendment and are not merely common law torts as Plaintiff labels them. Caselaw dictates that sovereign immunity has not been waived for constitutional torts and therefore, the court lacks subject matter jurisdiction over such claims. *See Harris v. Unites States*, No. 3:10-cv-00027, 2010 WL 2733448, at *3 (E.D. Va. June 8, 2010) ("The United States Supreme Court has held that federal constitutional tort claims are not cognizable under the FTCA.") (citing *FDIC v. Meyer*, 510 U.S. at 478); *see also Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999) ("[T]he United States has not waived sovereign immunity in suits claiming constitutional torts[.]"); *Williams v. U.S.*, 242 F.3d 169, 175 (4th Cir. 2001) ("[T]he U.S. simply has not rendered itself liable under [the FTCA] for constitutional tort claims.").

that the defendant-officer 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Rich*, 158 F.Supp. 2d at 629.

Defendants argue that all of Plaintiff's remaining claims under the FTCA fail because she cannot establish that the Individual Defendants acted with actual malice. (*See* ECF No. 22-1, at 14-19). The court disagrees. Assuming all factual allegations to be true and viewing them in the light most favorable to Plaintiff, a factfinder, if given the opportunity, could well conclude that the Individual Defendants were motivated by an improper motive or had an affirmative intent to bring harm to Plaintiff. According to Plaintiff's version of events,[5] the Individual Defendants had direct knowledge that Plaintiff and her infant child were asleep in the basement bedroom of the residence and yet, without providing any warning, intentionally released an attack dog which, in Defendants words, "was trained to [] bit[e] the first person he encountered[.]" (*Id.*, at 5). Defendants' argument that they were motivated by a desire to "locate" Mr. Trinidad rather than by any ill-will ignores Plaintiff's version of events. Mr. Trinidad's mother had already advised the

---

[5] Plaintiff's and Defendants' versions of events are diametrically opposed. As emphasized in *Mays*, 2021 WL 1181273, Defendants' version is irrelevant at this stage.

Individual Defendants of his exact location: asleep in the basement, along with his girlfriend and child. Moreover, the DUSMs had already "cleared" the rest of the house and confirmed that Mr. Trinidad was not in any other location. (*See id.*, at 6). It would not be unreasonable to infer from these facts that the Individual Defendants were motivated by an extreme and overzealous intent to injure Plaintiff. Thus, Plaintiff has alleged facts sufficient to establish that the Individual Defendants acted with actual malice.

Defendants also argue that Plaintiff's Battery (Count II) and False Imprisonment (Count III) claims should be dismissed because the Individual Defendants' actions were legally justified as they "feared, given their work and the individuals they were tasked with apprehending, that Trinidad could be planning an ambush-style attack." (*Id.*, at 24). Again, that argument depends on considering facts not contained in the complaint and drawing inferences in favor of Defendants, neither of which is appropriate. "Dismissal under Rule 12(b)(6) is appropriate only if plaintiff fails to state a claim that is plausible on its face." *Owens v. Balt. City State's Atty's Office*, 767 F.3d 379, 395-96 (4th Cir. 2014) (internal quotation marks and citations omitted). As discussed above, Ms. Orellana has "provided sufficient detail about h[er] claim to show that [s]he has a more-than-conceivable chance of success on the merits." *Twombly*, 550 U.S. at 570. Accordingly, dismissal on the ground that Individual Defendants'

10

actions were legally justified is inappropriate. Lacking any meritorious grounds for dismissal, Counts II and III will be allowed to proceed.

As to Plaintiff's final claim under the FTCA, Count VI, Defendants argue that Plaintiff fails to allege the first and second elements necessary to state a claim under Maryland law for IIED.[6]

> To recover for IIED under Maryland law, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. [*Harris v. Jones*, 281 Md. 560, 566 (Md. 1977)]; *see also Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 466 (D.Md. 2008) (citing *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 58, 502 A.2d 1057 (1986)). All four elements must be established, and the liability for the tort should be imposed sparingly, "its balm

---

[6] Defendants also argue that the court lacks subject matter jurisdiction over Plaintiff's claim for IIED because the United States has not waived its sovereign immunity for IIED claims. (*See* ECF No. 22-1, at 20-21). In their reply, however, Defendants concede that there is a conflict in this district over whether the FTCA waives sovereign immunity for IIED claims. While *Tinch v. U.S.*, 189 F.Supp 2d. 313, 317 (D.Md. 2002), and *Harms v. U.S.*, 972 F.2d 339 (4th Cir. 1992), both state that the FTCA does *not* waive sovereign immunity for IIED claims, a more recent case out of this district (albeit unreported) expressly states that IIED claims *are* permissible under the FTCA. *See Johnson v. United States Dep't of Just.*, No. PJM 14-4008, 2016 WL 4593467, at *8 (D.Md. Sept. 2, 2016) (citing *Truman v. U.S.*, 26 F.3d 592, 595 (5th Cir. 1994)). Because the caselaw lacks clarity on this precise issue and because Plaintiff will be permitted to move forward in pressing her claims in Counts II and III, the court will allow her to proceed with her IIED claim in Count VI as well.

11

> reserved for those wounds that are truly severe and incapable of healing themselves." *Caldor, Inc. v. Bowden*, 330 Md. 632, 642, 625 A.2d 959 (1993) (quoting *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69 (1991)).

*Brengle v. Greenbelt Homes, Inc.*, 804 F. Supp. 2d 447, 452 (D.Md. 2011). As to the first element, Defendants argue that Plaintiff alleges only negligent conduct, rather than intentional or reckless conduct. (*See* ECF No. 22-1, at 22) ("At most, Plaintiff alleges that Individual Defendants negligently failed to announce Dart's presence so that Plaintiff, who was behind a sealed wall, could hear. But '[m]ere negligence does not satisfy this element of the tort.'"). As to the second element, Defendants argue that Plaintiff does not allege extreme and outrageous conduct. (*See id.*, at 23-25). Defendants are wrong. Plaintiff's allegations sufficiently allege that the Individual Defendants' conduct was both intentional/reckless and extreme and outrageous. As noted above, the amended complaint alleges that the Individual Defendants *knew*, before entering the basement, that Plaintiff and her infant child were asleep in this area. By intentionally releasing Dart from his tether and allowing him to enter the basement unrestrained, the Individual Defendants intended that the dog *find and bite* a person. Such conduct, if true, certainly "go[es] beyond all possible bounds of decency" and can "be regarded as atrocious, and utterly intolerable in a civilized community." *Kohler v. Shenasky*, 914 F. Supp. 1206, 1212 (D.Md. 1995).

Defendants do not challenge Plaintiff's showing as to the third and fourth elements required to state a claim for IIED. As to these elements, the allegations in the complaint are thin, at best, but sufficient, given the requirements at this stage that the complaint be reviewed in the light most favorable to Plaintiff. Accordingly, Counts II, III, and VI survive while Counts IV and V will be dismissed for lack of subject matter jurisdiction.

### B.  *Bivens*[7] Action Against the Deputy U.S. Marshals in their Individual Capacities

Defendants first argue that the FTCA's judgment bar requires dismissal of Plaintiff's *Bivens* claim in Count I.[8] (*See* ECF No. 22-1, at 25). Given that Plaintiff's claims under the FTCA in Counts II, III, and VI will proceed, however, this argument fails. Defendants alternatively argue that the Individual Defendants are entitled to qualified immunity because Plaintiff cannot establish a violation of her Fourth Amendment rights; and even if she could, any such right was not "clearly established" at the time of these

---

[7] The Supreme Court sharply limited the likelihood of obtaining a *Bivens* remedy in *Hernandez v. Mesa*, 140 S.Ct. 735 (2020). In that case, the Court declined to extend a *Bivens* action remedy to a cross-border shooting situation, holding that the petitioner's claim involved a "new context" where special factors counseled hesitation about extending the availability of the remedy. *Id.*, at 749-50. While Defendants do not mention *Hernandez*, Plaintiff's *Bivens* claim is not significantly different from previous *Bivens* claims and does not arise in a "new context." Thus, it does not appear that Plaintiff's claim is implicated by the recent ruling in *Hernandez*.

[8] *See Brownback v. King*, 141 S. Ct. 740 (2021).

13

events.  (*See* ECF No. 22-1, at 29-31).  Once again, the court disagrees and finds the present case to be one of the rare instances in which the plaintiff has stated a claim sufficient to overcome qualified immunity at this stage.

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [] (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In evaluating whether dismissal is warranted on the ground of qualified immunity, courts apply a two-part test.  The court must determine whether the facts alleged, viewed in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right.  *Id*., at 232.  The court must also "decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct.  [] Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."  *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "While a decision directly on point is not required to put officials on notice of a 'clearly established' right, '[t]he contours of the right must be

14

sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.,* at 236. The burden is on the Plaintiff to prove that the alleged conduct violated the law, while Defendant[s] must prove that the right was not clearly established. *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007). Finally, the court should make a ruling on the qualified immunity issue "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

"All claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This "include[es] claims that police canines were improperly deployed." *Melgar ex rel. Melgar v. Green*, 593 F.3d 348, 355 (2010) (citing *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (1998)).

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often required to make split second

15

>       judgments-in circumstances that are tense,
>       uncertain, and rapidly evolving-about the
>       amount of force that is necessary in a
>       particular situation.

*Graham*, 490 U.S. at 396-97.  Defendants do not dispute that a seizure of Plaintiff occurred, rather, they merely contend that such seizure was objectively reasonable under the circumstances because the Individual Defendants "were involved in a rapidly evolving search for a wanted criminal who was known to be in the subject residence and was suspected to be in sealed-off portion of the house."  (ECF No. 22-1, at 31).

Contrary to Defendants' assertions, the allegations in Plaintiff's amended complaint establish a plausible violation of her Fourth Amendment right to be free from unreasonable seizures. First, the Individual Defendants were made aware that Plaintiff and her infant child were asleep in the basement with Mr. Trinidad. Second, the Individual Defendants were aware that "a police dog cannot discriminate between a criminal and an innocent person[,]" *Vathekan*, 154 F.3d at 178, and that, once released, the dog would unquestionably "bit[e] the first person he encountered[.]"  (*Id.*, at 5).  Third, the Individual Defendants faced no immediate threat because they knew precisely where the suspect was located within the house, that he was wanted only for a minor misdemeanor offense, and that he lacked any significant criminal history.  Finally, the Individual Defendants themselves seem to concede that the use of

16

force was excessive in their admission that "[o]ften times the presence of a K9 will deter criminals through intimidation alone. Fugitives will often times comply after knowing a K9 is on scene-particularly if they were hiding before." (ECF Nos. 22-2, at 3 & 22-3, at 4). Despite all of these facts, the Individual Defendants intentionally released a trained police attack dog into the room where they knew Plaintiff and her infant child were present without any verbal warning or time to surrender. As Defendants themselves note, "the Fourth Amendment is violated when an officer *who faces no immediate threat* deploys a police dog without prior warning." (ECF No. 26, at 9) (citing *Est. of Rodgers ex rel. Rodgers v. Smith*, 188 F. App'x 175, 182 (4th Cir. 2006)). Based on the foregoing facts, one could conclude that the Individual Defendants acted unreasonably with excessive use of force. Accordingly, Plaintiff has alleged sufficient facts for a jury to find that a constitutional violation has occurred.

Having concluded that the facts alleged could make out a violation of Plaintiff's Fourth Amendment rights, the court next asks whether this right was clearly established. It was. At the time of Plaintiff's seizure, it was clearly established that "a warning is necessary before releasing a [police] dog." *Melgar*, 593 F. 3d. at 358 (citing *Vathekan*, 154 F.3d at 179 and *Kopf* v. Wing, 942 F.2d 265, 268 (1991)). In fact, "it [has been] clearly established [since] 1995 that failing to give a verbal warning

17

before deploying a police dog to seize someone is objectively unreasonable and a violation of the Fourth Amendment." *Vathekan*, 154 F.3d at 179; *see also Kopf,* 942 F.2d at 268 (holding that improper deployment of a police dog that attacks the target constitutes excessive force).  Accordingly, the Individual Defendants are not entitled to qualified immunity and Plaintiff's *Bivens* claim will also survive dismissal.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted as to Counts IV and V and denied as to Counts I, II, III, and VI.  A separate order will follow.

                                                      /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge